**HAWN v. POPE & TALBOT, Inc. et al.**
(two cases).
Nos. 10613, 10630.

United States Court of Appeals
Third Circuit.

Argued May 22, 1952.

Filed Aug. 27, 1952.

As Amended Sept. 4, 1952.

Rehearing Denied Oct. 8, 1952.

As Amended Nov. 3, 1952.

Mark D. Alspach, Philadelphia, Pa. (Thomas E. Byrne, Jr., Krusen, Evans &

Shaw, Philadelphia, Pa., on the brief), for Pope & Talbot.

Charles Lakatos, Philadelphia, Pa. (Samuel H. Landy, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for Hawn.

Thomas F. Mount, Philadelphia, Pa. (Harrison G. Kildare, Joseph W. Henderson, Philadelphia, Pa., Rawle & Henderson, Philadelphia, Pa., on the brief), for Haenn.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is a civil action for personal injuries on a maritime claim. It resulted in a jury verdict in favor of the plaintiff with special findings that the vessel was unseaworthy; that both the defendant bare-boat charterer and the third-party defendant employer were negligent; and that the plaintiff was guilty of contributory negligence to the extent of 17½%. Following the disposal of post-trial motions, 99 F.Supp. 226, judgment was entered, 100 F.Supp. 338, in favor of the plaintiff against the defendant in the amount of the verdict less 17½% and in favor of the defendant and against the third-party defendant in the amount of the latter's liability under the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq. In No. 10,630 the defendant charterer appeals and in No. 10,613 the employer is the appellant.

Plaintiff, a ship's carpenter foreman, on November 16, 1947, was employed by the Haenn Ship Ceiling and Refitting Corporation. That morning he and other Haenn employees were making certain minor adjustments to the grain feeders aboard the S.S. John Dickinson then berthed in the Delaware River at Philadelphia. In the late morning and part of the afternoon he was helping prepare No. 4 hold for oats. During the course of the operation he walked forward in the 'tween deck area of that hold around the feeder to the starboard side. Crossing the hatch covers forward of feeder he went through a "manhole" which had been cut out of the center shifting board over the hatch square. On the starboard side he assigned a man to work in the after end and started back toward the port side of the ship. After proceeding through the "manhole" and beyond it two or three steps he paused in order to give a workman instructions on how to properly nail a cleat. As he turned to continue his journey he slipped on some loose grain underfoot, fell through an opening caused by the absence of a hatch board to the hold below and as a result sustained substantial injuries.

There was testimony by a ship cleaner foreman, who had been aboard the ship the day before, to the effect that at that time a "couple" of the hatch boards forward of the feeder were off. He did not know whether they were off on the port or starboard side. A longshoreman hatch foreman aboard the ship the morning of the accident testified that there were two port side hatch covers missing on the 'tween deck by No. 4 feeder. There was testimony indicating that it was through the opening caused by the removal of those hatch covers that the plaintiff Hawn fell.

Negligence.

■ The absence of the hatch covers over a length of time which could reasonably be construed as sufficient to have put appellant on constructive notice of that fact; testimony that the particular area during the critical period was dark and that the footing there was slippery, all combine to present a situation from which the charterer's negligence could be inferred.

Appellant vigorously disclaims any responsibility for Hawn's safety. Its theory is that both Hawn's employer and the cleaners had been engaged in their work by the time charterer of the vessel, the United States Army; that the appellant gave them no working instructions and that they were independent contractors. Therefore, says appellant, it had no connection with the missing hatch boards or the slippery making grain and grain dust and no duty to furnish artificial illumination.

While the jury might well have found that appellant was free from negligence, we cannot agree that appellant was not accountable for negligence if it had existed. Appellant as bare-boat charterer was for all practical purposes here arising the own-

er in possession of and operating the S.S. John Dickinson. Cannella v. Lykes Bros. S.S. Co., 2 Cir., 174 F.2d 794, certiorari denied 338 U.S. 859, 70 S.Ct. 102, 94 L. Ed. 526. Hawn was working for an intermediate employer. That employer, third-party defendant Haenn Corporation, was functioning under its contract with the record owner of the ship. However, there is not the slightest indication that as the ship was temporarily berthed at Philadelphia the appellant had surrendered actual control over it. Under those circumstances appellant was faced with its duty of providing Hawn who was engaged in the ship's service a reasonably safe place to work. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. Cf. Shields v. United States, 3 Cir., 175 F.2d 743, 744, certiorari denied 338 U.S. 899, 70 S.Ct. 249, 94 L.Ed. 553. There is nothing in the record to indicate that appellant's right as operating owner pro hac vice to control the entire ship, including the No. 4 hold, at the time Hawn was injured was in any way curtailed. There was testimony from which, if accepted, it could be concluded that the No. 4 hold was not a reasonably safe place for a workman engaged as Hawn was and that as a result of that condition he was injured. That question was clearly for the jury. It was properly so submitted by the trial court.

## Unseaworthiness.

■ Appellant contends that its warrant of seaworthiness did not extend to Hawn as a ship's carpenter. We think that argument without merit. Hawn was admittedly, as was the fact in Sulovitz v. United States, D.C.E.D.Pa., 64 F.Supp. 637, 640, "* * * actually working in the ship, preparing it to receive a cargo requiring special provision for its storage, and was therefore rendering services necessary in the performance of the ship's business of carrying cargo." The difference between Hawn and the longshoreman in Seas Shipping Co. v. Sieracki, supra, is, at most, one of slight degree. Appellant owed Hawn the duty of a seaworthy ship on which to work.

On the merits of this point appellant argues that there was no evidence of unsea-worthiness. The contention is not borne out by the record. The absence of the hatch covers in the 'tween deck where Hawn was supervising his workmen and with the facts justifying an inference of the existence of that situation for such a period as to remove it from the type of transitory conditions exemplified in Cookingham v. United States, 3 Cir., 184 F.2d 213, certiorari denied 340 U.S. 935, 71 S. Ct. 495, 95 L.Ed. 675, was sufficient to allow submission of that question to the jury. Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561.

## Motion to Withdraw Juror.

■ Appellant urges that it is entitled to a new trial because of an incident which occurred after the trial below had commenced and counsel had opened. Following that the trial was adjourned in compliance with a request from another judge of the Eastern District that the jury be permitted to attend a conference of the jury panel that afternoon. Later that same day the jury with the balance of the jury panel reported to another courtroom and assisted an inquiry then being conducted by the district court judge who had called the conference as to the conduct of certain persons who had apparently investigated the jury panel prior to its term of service. One of the questions directed to the jurors in that investigation had to do with their opinions of insurance companies and large corporations. There was some publicity about the inquiry in the Philadelphia papers the day after the meeting. On that next day the trial judge queried the jurors in this case whether they thought any particular group had been trying to influence them and whether, under the circumstances, they could render a fair and impartial verdict. Those of the jurors who answered said no to the first question and yes to the second. There was no indication that the impression had been received of an effort being made to influence any member of the jury or that a fair verdict could not be rendered in this issue. The court gave a brief common sense talk to the jurors in which he distinguished between an ordinary legitimate neighborhood inquiry regarding jurors and an attempt to influence them.

Obviously convinced that no harm had been done, he denied appellant's motion to withdraw a juror and allowed the trial to continue. We are satisfied that no prejudicial error was committed by so doing. The incident was minor. It was handled discreetly, promptly and effectively by the district judge. There is not the slightest cause to believe that the episode affected the verdict. Certainly there was no substantial harm to appellant as a result.

### The Court's Charge.

The court charged a request of the plaintiff that if the jury found the hatch covers missing, and that the ship's officers or crew failed to warn the plaintiff of the existence of this condition, or that the defendant had failed to supply adequate lighting or that there was grain or grain dust on the hatch covers of the 'tween decks of No. 4 hold which rendered them slippery and that defendant failed to use reasonable means to correct that condition "* * * then you may find that Pope & Talbot, Inc. failed to exercise due diligence in providing the plaintiff with a reasonably safe place in which to work." There was no objection regarding this made to the trial court. It is therefore not properly before us. In any event no error of substance is revealed in this portion of the charge. The basis of responsibility of the defendant for the missing hatch covers as given to the jury by the court was in the event they had been missing since prior to the time the cleaners and carpenters had come aboard. "Under the circumstances" was implicit in the language regarding the failure to supply adequate lighting and the presence of grain or grain dust on the hatch covers constituting a permissible finding that defendant did not furnish a reasonably safe place to work. The circumstance which rendered the lighting and condition of the 'tween deck vital was the open space caused by the previous removal of the hatch boards through which Hawn fell and was hurt. Given proper lighting Hawn might have seen what was otherwise a trap. Given a clean footing in the 'tween deck Hawn would not have slipped into the hold. The language charged was consonant with defendant's own request on

negligence, No. 9, which was charged immediately thereafter by the court and which stated, "You may not find in favor of the Plaintiff unless he has established by a fair preponderance of the evidence, that his accident was caused, in whole or in part, by some negligence on the part of the Defendant, or the unseaworthiness of the vessel."

Appellant also presently objects to the court saying in the charge regarding the contract between the Army and Haenn, "* * * you might well forget about it as between Mr. Hawn, who was injured, and the shipping company, or owners of the vessel." This objection was not made below and is invalid here. It is substantially the same theory advanced by the appellant in its argument under the caption "Negligence" and is there dealt with.

Appellant complains of the court's interpretation to the jury of the doctrine of seaworthiness to which it had objected below. Concededly, the one condition given the jury on this branch of the claim involved was that concerning the missing hatch covers. In his opinion on the various after trial motions the district judge stated that he did not consider either the lighting or the footing items in that category. Towards the end of the charge appeared the following:

"Under the maritime law there was an absolute duty on the part of defendant, Pope & Talbot, Inc., the operator of the S.S. 'John Dickinson' to provide a safe and seaworthy vessel and to supply and keep in order the appliances and equipment appurtenant to the ship for the safe use of all shore side workers rendering services with the consent of the defendant, Pope & Talbot, Inc., and necessary in the performance of the ship's business. This duty extended to the plaintiff who was on board the 'John Dickinson' with the consent of the defendant, Pope & Talbot, Inc., and who was engaged in preparing the ship to receive cargo. This obligation is absolute in character and is not satisfied by the mere exercise of reasonable care. In other words, under the maritime law the op-

erators of the S.S. 'John Dickinson' are liable for any injuries sustained by the plaintiff by reason of the unseaworthiness of the ship or defects in its appliances and this liability follows even if defendant, Pope & Talbot, Inc., has exercised due care. Therefore, if you should find that at the time the S.S. 'John Dickinson' arrived in the port of Philadelphia and before the shore side workers commenced working on the vessel two hatch covers were missing from the hatch in the 'tween deck of the No. 4 hold, and that by reason thereof plaintiff fell to the hold below and was injured, your verdict should be for the plaintiff and against Pope & Talbot, Inc., even if you should also find that Pope & Talbot, Inc., was not guilty of negligence for any such case, the liability of Pope & Talbot, Inc., is absolute and does not depend upon its failure to exercise due care. In this respect the maritime law differs from the law as generally applied to injuries sustained ashore where proof of negligence is essential to the recovery of damages for personal injuries."

By the above the jury was generally given a fair idea of the doctrine of seaworthiness as followed in this suit by the trial judge and instructed specifically that the sole condition in evidence affected by the rule laid down involved the missing hatch covers. Appellant's dispute with the principle outlined by the trial judge is discussed above under "Seaworthiness".

Appellant objects to the definition of burden of proof in the charge. Though this was not raised below either and consequently not entitled to be heard on this appeal, our own examination of the charge reveals no material harm ensued in this connection. The objection is in two parts. The first complains that the court failed to include causal relationship between the vessel's fault and the accident. Request No. 9 of the appellant stated that rule plainly and was charged verbatim. In addition, the necessity of the plaintiff establishing proximate cause was brought home most forcibly to the jury by the following request of counsel for appellant and the court's complete agreement therewith:

> "Mr. Alspach: I ask Your Honor to charge the jury that even if they find that there is unseaworthiness or negligence on our part, that the plaintiff must further establish by a preponderance of the evidence that either one or both was the proximate cause of the accident

> "The Court: They have that. I think we went over that five or six times."

The second part of the objection relates to a statement of the court in the charge on the burden of proof. Taking what the court had said just previously and directly thereafter, there was no real danger of the jury, because of this, becoming confused regarding the true rule.[1] This conclusion is further strengthened because at the end of the charge the district judge reiterated the correct doctrine as to burden of proof when he charged defendant's request No. 9.

The propositions on which all but one of the remainder of appellant's contentions regarding the charge are based, none of which were noted in the district court,

---

[1] The full text of the pertinent part of the charge reads:

"*In these cases*, members of the jury, *the burden is always on the plaintiff to prove by a preponderance of the evidence in this particular matter, one, that the ship was unseaworthy, two, that the owners of the vessel were negligent, * * *.*

"While I say that the burden is on Mr. Hawn to prove those things to you by a preponderance of the evidence, if he has, then the burden shifts over to the other side.

"What have they said by way of defense? You have heard both sides now and I am not going to say anything about it. *If Mr. Hawn has not met that burden, and he has not satisfied you by a preponderance of the evidence that the ship was unseaworthy, or that there was negligence on the part of Pope & Talbot, * * * that is the end of the case, you just drop it right there.*" (Emphasis supplied).

have been passed upon either under "Seaworthiness" or "Negligence" above.

Finally as to the charge, appellant stresses that the court committed prejudicial error by language therein with respect to requirements in order to find for the defendant. A reading of the charge as a whole shows that the trial judge expressly instructed the jury that " * * * the happening of an accident alone * * * " did not entitle the plaintiff to damages and that in explaining the circumstances in which their verdict should be for the plaintiff he said,

> " * * * your verdict should be for the plaintiff and against Pope & Talbot, Inc. if you should find that the accident and the consequent injuries to plaintiff resulted from either the unseaworthiness of the S.S. 'John Dickinson' or the negligence of the employees or agents of Pope & Talbot, Inc., or both."

The substance of this was repeated in appellant's own words by the charging of defense request No. 9. Definitely there is no ground for this assertion of serious error.

### Plaintiff's Contributory Negligence as a Bar to His Recovery.

This is a maritime claim sued on in the Federal Court, civil side. Appellant advances the flat proposition that since it is a diversity action the Pennsylvania contributory negligence rule which defeats recovery must be applied. It cites Atlee v. Packet Co., 21 Wall. 389, 22 L.Ed. 619 and Belden v. Chase, 150 U.S. 674, 14 S.Ct. 264, 37 L.Ed. 1218, both of which contain dicta which does strongly support appellant's position. The Second Circuit after departing from the Atlee and Belden view in Port of New York Stevedoring Corp. v. Castagna, 280 F. 618, certiorari denied 258 U.S. 631, 42 S.Ct. 463, 66 L.Ed. 801, reaffirmed its allegiance to those cases in Johnson v. United States Shipping Board Emergency Fleet Corp., 2 Cir., 24 F.2d 963, reversed on other grounds 280 U.S. 320, 50

S.Ct. 118, 74 L.Ed. 451; In re Pennsylvania R. Co., 2 Cir., 48 F.2d 559, certiorari denied 284 U.S. 640, 52 S.Ct. 21, 76 L.Ed. 544; Guerrini v. United States, 2 Cir., 167 F.2d 352, certiorari denied 335 U.S. 843, 69 S.Ct. 65, 93 L.Ed. 393.[2]

We think that appellant's view is incorrect and that the thought expressed in the Atlee opinion and followed in Belden to the effect that since plaintiff had elected to sue at law instead of in admiralty on a maritime tort his contributory negligence prevented recovery, no longer reflects the opinion of the Supreme Court. This is demonstrated by its decision in Garrett v. Moore-McCormack, 317 U.S. 239, 245, 63 S.Ct. 246, 251, 87 L.Ed. 239. There in a maritime personal injury claim brought in the Pennsylvania state court the Supreme Court in upholding the federal release rule said, "So here, in trying this case the state court was bound to proceed in such manner that all the substantial rights of the parties under controlling federal law would be protected." Seas Shipping Co. v. Sieracki, supra, was a civil suit for personal injuries by a longshoreman in the court below. The action was founded on unseaworthiness and one defense was that such doctrine was only available in admiralty. The Supreme Court held 328 U. S. at page 88, 66 S.Ct. at page 874, 90 L. Ed. 1099: "It is now well settled that a right peculiar to the law of admiralty may be enforced either by a suit in admiralty or by one on the law side of the court." See also Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927; Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171.

Appellant insists that Caldarola v. Eckert, 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968, an action by a stevedore in a state court of New York, sustains its theory that the state rule is to be applied in the present circumstances. That case turned on whether it was the state of New York's duty to accept the federal claim involved, not on whether a state statute controlled and thus wiped out a fundamental admir-

---

2. In an opinion filed July 15, 1952 the Second Circuit has definitely and finally repudiated the Belden v. Chase doctrine.

W. E. Hedger Transportation Corporation v. United Fruit Company, 198 F. 2d 376.

alty right. In the case at bar plaintiff started his action in the federal court on his maritime claim. If the Pennsylvania rule governs he is literally deprived of that claim and according to the theory of the appellant merely because he did not title his suit "In Admiralty". Decisional law does not compel this view. It is not the simple matter of adopting state procedure. To permit the state doctrine in this instance to supersede this strictly federal principle as a practical matter destroys the plaintiff's admittedly valid cause of action. We refuse to take that course.

#### Effect of Plaintiff's Contributory Negligence on the Amount of his Verdict.

 Appellant urges that since plaintiff was found guilty of contributory negligence he cannot recover more than half of the jury verdict. We think that the admiralty principle of comparative negligence clearly applies to the case at bar. Unquestionably that is the admiralty doctrine. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 432–433, 59 S.Ct. 262, 83 L.Ed. 265. It was applied recently by Judge Kalodner sitting in the district court where a longshoreman carpenter had been injured upon navigable waters. Palardy v. United States, D.C.E.D.Pa., 102 F.Supp. 534. To the same effect, Guerrini v. United States, supra; Badalamenti v. United States, D. C., 67 F.Supp. 575, modified on other grounds, 2 Cir., 160 F.2d 422; Kreste v. United States, 2 Cir., 158 F.2d 575.

#### Whether Appellant is Entitled to Full Indemnity from the Third-Party Defendant.

 Appellant's theory in this point is that under the evidence the verdict fixed the liability of Haenn Corporation as primary and its own as secondary. We are unable to find any substantial foundation for this suggestion. The jury decided that both appellant and Haenn were negligent. No distinction was attempted as between them. The plain inference is that they were found to be concurrently and equally at fault. Cf. Union Sulphur & Oil Corp. v. W. J. Jones & Son, Inc., 9 Cir., 195 F.2d 93, 94. With reference to the poor lighting and slippery footing at a time when two hatch covers in Hawn's path were missing which were the elements of the negligence proved, the lighting and hatch cover circumstances were attributable to the vessel under the evidence and the grain which had caused the footing condition had been placed aboard, not by Haenn, but by Atlantic & Gulf Stevedores, Inc.

#### Compensation Act Contention.

 Finally appellant argues that Hawn's recovery against it be reduced by the amount of compensation and medical expenses payable to him or on his behalf by his employer under the Act. It is said that otherwise the negligent employer stands completely indemnified by a mutual wrongdoer, the appellant, since Hawn has contracted with his employer to reimburse the latter out of any recovery he obtains in this action against appellant.

We find no sound basis for that proposition. The compensation and medical expenses paid Hawn by his employer had no relationship to negligence of either. If Hawn had been injured solely through his own fault the employer would have been just as responsible to him under the Act (subject to its exceptions below noted) for compensation and medical expenses.[3]

What appellant actually seeks under this point is to accomplish by indirection the exact same result repudiated in Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277. In that decision the Supreme Court, in refusing to extend the maritime contribution collision rule to non-collision cases, held that the jointly negligent employer was not responsible for contribution in any amount —specifically not responsible in the sum it would have been compelled to pay as com-

---

3. The Act does specifically provide that, "No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another." 44 Stat. 1426, 33 U. S.C.A. § 903 (b).

pensation to the injured plaintiff. The court 242 U.S. at pages 285, 286, 72 S.Ct. at page 280, noted that the Longshoremen's and Harbor Workers' Act "* * * has made fault unimportant in determining the employer's responsibility to his employee; * * *" and then stated that, "The Harbor Workers' Act in turn must be integrated with other acts such as the Jones Act, 41 Stat. 1007, 46 U.S.C. § 688, 46 U.S.C.A. § 688, the Public Vessels Act, 43 Stat. 1112, 46 U.S.C. §§ 781–790, 46 U.S.C.A. §§ 781–790, the Limited Liability Act, R.S. § 4281, as amended, 46 U.S.C. § 181 et seq., 46 U.S.C.A. § 181 et seq., and the Harter Act, 27 Stat. 445, 46 U.S.C. §§ 190–195, 46 U.S.C.A. §§ 190–195." In the issue before us the effect of compliance with appellant's suggestion would be to force Haenn's contribution to the judgment against appellant charterer in the amount of the compensation and medical expenses paid by it to Hawn, its injured employee.

## No. 10,613.

In this appeal the third-party defendant employer contends that the judgment for contribution against it in the amount it was responsible for under the Longshoremen's and Harbor Workers' Compensation Act should be set aside. At the time the district court decided that under the jury verdict the employer should contribute and in the amount of its compensation liability,[4] it very properly followed our opinion on much the same sort of issue in Baccile v. Halcyon Lines, 3 Cir., 187 F.2d 403. Since then the Supreme Court reversed that decision, sub nom. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., supra, and as has already been stated, squarely held that in such a case as this where the stevedore employer and the ship owner were both found negligent, the employer was not required to contribute to the owner.

The charterer again urges that it is entitled to indemnity from Haenn and therefore that the Supreme Court opinion in Halcyon does not control. As we have above indicated that argument finds no support in the present situation where upon the facts proven the jury properly found

that the charterer and the employer jointly caused the injury to Hawn.

In accordance with this opinion the judgment in favor of plaintiff-appellee Charles Hawn and against Pope & Talbot, Inc., appellant in No. 10,630 and appellee in No. 10,613, will be affirmed; and the judgment in favor of Pope & Talbot, Inc. and against Haenn Ship Ceiling and Refitting Corporation (appellee in No. 10,630 and appellant in No. 10,613) will be reversed.

---

**4.** See Trial Court's memorandum re final judgment, 100 F.Supp. 338.