[Civ. No. 15877. First Dist., Div. One. Apr. 12, 1954.]

SANDRA GLADSTONE, Respondent, v. MATSON NAVI-
GATION COMPANY (a Corporation), Appellant.

494

Brobeck, Phleger & Harrison for Appellant.

Gladstein, Andersen & Leonard and Norman Leonard for Respondent.

BRAY, J.—Defendant appeals from a judgment for $8,000 in favor of plaintiff.

### QUESTIONS PRESENTED

1. Sufficiency of the evidence.
2. Correctness of instructions.

### RECORD

Plaintiff was employed as a stewardess on board defendant's S.S. Lurline, and was injured while performing her duty as such stewardess. Of the three causes of action in the first amended complaint, the first is for negligence under the Jones Act (41 Stats. 1007, 46 U.S.C.A. § 688) for injuries. The second is for maintenance. The third is for injuries due to the unseaworthiness of the ship under the general maritime law. Motions for directed verdict, judgment notwithstanding the verdict, and new trial were denied.

### EVIDENCE

Plaintiff's job was to give room service to persons occupying certain staterooms on D deck which was one deck above the galley, located on E deck, where she filled her orders. She was entitled to use and customarily used a certain stairway (ladder is the seagoing term) between decks. This stairway was used likewise by all members of the crew including those from the engine room. Plaintiff had last used it from

20 to 45 minutes before the accident. Plaintiff was proceeding down the stairway carrying a tray (measuring 3 x 5 feet) stacked with empty dishes which she was taking to the galley. When she had taken two to four steps down the stairway (whose angle was 40-45 degrees) she felt one of her feet "slide out from under" her and then the other did so. She fell to the bottom of the stairway, receiving the injuries complained of. She saw some kind of black grease or oil "all over" her legs and uniform. It was mostly on her back and side and was on her shoes. She saw something shiny on the stairway which looked like oil which comes out of a crankcase. A seaman who saw her sliding down the steps said there was grease on the side and back of her uniform. He saw on the stairway a shiny substance which looked like grease to him. A utility man who saw plaintiff lying at the foot of the stairway saw oil on her uniform and legs and saw oil on the steps. The ship's nurse testified that plaintiff's uniform was soiled with what had the appearance of muddy water—it did not look like grease. The ship's doctor stated there was a wet "brownish discoloration" on her uniform over her left hip but he did not recall any discoloration on her stockings. The executive chef stated in his deposition that about 10 to 15 minutes before plaintiff fell someone pointed out to him that there were broken dishes and liquids on the stairway and he immediately ordered one of the scullions to clean it up. He did not remember whether he saw the stairway between that time and when plaintiff fell. He received no report that the stairway had been cleaned. The normal way to clean it would be to remove the broken dishes and clean it with a wet mop. He reached plaintiff after her fall as she was being helped to her feet by members of the crew. She stated to him "it is pretty slick" or something like that. At that time the stairway was wet from spilled orange juice, coffee, cream and Danish pastry which had fallen from plaintiff's tray, and there was coffee and orange juice all over her uniform. Plaintiff testified she did not remember whether there was any orange juice or coffee on her uniform. Plaintiff testified that the executive chef in her presence ordered that the steps be cleaned "before somebody gets killed."

### APPLICABLE LAW

It is conceded that this action must be determined by federal law. (See *Intagliata* v. *Shipowners & Mer. etc. Co.*, 26 Cal.2d 365, 371 [159 P.2d 1].) Either under the

Jones Act or the general maritime law plaintiff must prove notice to defendant of the slippery condition of the stairway (such notice to be either actual or constructive) and the failure of defendant within a reasonable time thereafter to remove such condition. ▮ Liability under the Jones Act rests wholly on negligence and where, as here, there is no evidence of how the slippery condition occurred, the negligence of defendant would be the failure of defendant to remove it within a reasonable time after defendant knew of its existence, or after it had been there such a length of time that in the exercise of ordinary care defendant ought to have known of it and removed it. (See *Pietryzk* v. *Dollar Steamship Lines, Inc.*, 31 Cal.App.2d 584 [88 P.2d 783]; *Seaboard Air Line R. Co.* v. *Horton*, 233 U.S. 492 [34 S.Ct. 635, 58 L.Ed. 1062]; *Cookingham* v. *United States*, 184 F.2d 213, cert.den. 340 U.S. 935 [71 S.Ct. 495, 95 L.Ed. 675].) The same rule applies to the unseaworthiness cause of action. ▮ While generally there is an absolute liability on a shipowner regardless of notice, for the unseaworthy character of his ship, where there is merely a transitory unseaworthiness, and no fault or failure of appliance or equipment, the shipowner's liability arises only from failure to remove that transitory unseaworthiness within a reasonable time of notice, actual or constructive, or from failure to use ordinary care to keep the ship free from transitory unseaworthiness. Thus either under the Jones Act or the general maritime law pertaining to transitory conditions the rule is practically the same in requiring notice of the condition. (See *Cookingham* v. *United States, supra,* 184 F.2d 213.)

The cases cited by plaintiff as contrary to the transitory unseaworthiness rule of the Cookingham case are not so. *Haywood* v. *Jones & Laughlin Steel Corp.*, 205 F.2d 775, concerned a rail on a barge which gave way. *Brabazon* v. *Belships Co.*, 202 F.2d 904, dealt with a board used as a walkway which broke from the plaintiff's weight. In *Read* v. *United States*, 201 F.2d 758, the plaintiff fell off a walkway due to the failure of the ship to supply sufficient lighting. In *Hawn* v. *Pope & Talbot, Inc.*, 198 F.2d 800, the court expressly recognized the Cookingham rule by stating (p. 803) "The absence of the hatch covers in the 'tween deck . . . with the facts justifying an inference of the existence of that situation for such a period as to remove it from the type of transitory conditions exemplified in *Cookingham* v. *United States* . . . was sufficient to allow submission of that question to the

jury." In *Lauro* v. *United States*, 162 F.2d 32, the trial court found that the oil on which the plaintiff slipped had been there " 'at the time of the commencement of the work.' " (P. 34.) The reviewing court stated that it was not clear whether this meant when the plaintiff commenced work that morning or commenced work on the particular hatch which was approximately two hours before the accident. There is no discussion of the question of notice and the case was decided prior to the Cookingham case. *Cervo* v. *Isbrandtsen Co.*, 178 F.2d 919, also decided before the Cookingham case, actually supports its rule, for the court said "The questions whether there was grease on the floor and whether the defendant should have removed it in order to afford the plaintiff a safe place to work were matters for the consideration of the jury." (Pp. 919-920.) In *Becker* v. *Waterman S.S. Corp.*, 179 F.2d 713, the plaintiff was injured because of "the negligence of the assistant engineer in failing to pump the oil out of the rose boxes as he had said he would do." (P. 714.) In *Interocean S.S. Co.* v. *Topolofsky*, 165 F.2d 783, the plaintiff's injuries were due to a defective step due to the absence of certain bolts. It would appear that this was a condition of definite unseaworthiness rather than of the transitory type and yet the court applied the same rule as was later applied in the Cookingham case, for the court said "Whether such defect existed, and, if it did, whether appellant [shipowner] knew of, or should have known of, or discovered, this dangerous defect in the step, was a question for the jury." (P. 784.) In *Bachman* v. *United States*, 72 F.Supp. 298, where libellant slipped on oil slick metal floor plates on a ship, the court stated without detailing the evidence that it preponderantly showed that the plates "were in an unseaworthy and negligent condition by reason of the failure of the ship and shipowner to keep the oil slick wiped up with a proper and suitable instrument such as a dry mop . . ." Whether this oil slick was an unusual condition, and if so, how long it had been there when the libellant slipped, is not discussed. In *Giacalone* v. *U. S. A.*, 1946 A.M.C. 1219 (D.C. N.Y.) the discussion of the facts is not sufficient to determine how long the oil upon which the libellant stepped was there. The court stated that the evidence did not show that the libellant was told of danger from the oil, but it did show that it was present in sufficient quantity to cause him to fall and that the shipowner failed

to provide him with a safe place to work "or to safeguard him from enough of such oil as caused or to cause him to fall." (P. 1220.) Even more fragmentary is the statement of evidence in *Hollis* v. *Grace Line,* 1952 A.M.C. 1609 (D.C. Cal.). All the opinion discloses is that there "was oil on the deck . . . at the time the libellant slipped and fell upon it." (P. 1609.) Certainly in such fragmentary portrayals of evidence there is nothing conflicting with the rule in the Cookingham case. Plaintiff has cited other cases such as *The Osceola,* 189 U.S. 158 [23 S.Ct. 483, 47 L.Ed. 760], where the unseaworthiness of the ship definitely was not of the transitory type.

### 1. SUFFICIENCY OF EVIDENCE

Taking the evidence and the reasonable inferences therefrom, as we are required to do, there is ample evidence to support the jury's implied findings that (1) plaintiff slipped on some slippery substance on the stairway (whether oil or grease, as the jury could have determined from the testimony of plaintiff and certain of her witnesses, or coffee or orange juice, which they could have determined from the testimony of the executive chef, the ship's doctor and ship's nurse), and (2) that defendant through its executive chef had knowledge of the condition at least 10 to 15 minutes before the accident and did not clean it up, and (3) that with the constant use of the stairway by crew and plaintiff as testified, defendant reasonably should have freed the stairway from the condition between the time when the chef ordered it cleaned and plaintiff's fall.

### 2. INSTRUCTIONS

*Jones Act Count.*

Defendant contends that the court did not instruct concerning the Jones Act count that for defendant to be liable for negligence it must have had notice of the foreign substance and failed reasonably to remove it. The court did not specifically so instruct nor were the instructions on negligence sufficient to inform the jury that such was required by the Jones Act. It instructed that the first count was for damages under the Jones Act for injuries sustained as a result of the alleged negligence of defendant and its employees. As to negligence it instructed that the burden of proving negligence by a preponderance of the evidence was on plaintiff; that for the evidence to preponderate, it had to be of a substantial and convincing quality; that negligence

was not to be presumed from the mere happening of the accident; that negligence was the doing of an act which a reasonably prudent person would not do or the failure to do an act which a reasonably prudent person would do under the circumstances presented by the evidence; that the circumstances to be considered were "those which may reasonably be supposed to have been known to such person and to have influenced his mind and actions at that time"; that a helpful test in determining whether a person was negligent was to ask and answer whether "if a person of ordinary prudence had been in the same situation and possessed of the same knowledge, he would have foreseen or anticipated" the injury; and that if the injury was foreseeable by a prudent person "with like knowledge and in a like situation," and if the conduct could reasonably have been avoided, then not to avoid it would be negligence; that under the Jones Act a seaman may maintain an action for injury if the injury results from the negligence of any of the agents, officers or employees of the employer; that it was the obligation of defendant to use ordinary care at all times to furnish plaintiff with a reasonably safe place to work; that if defendant negligently failed to use ordinary care to provide plaintiff with a reasonably safe place to work, and such negligence proximately caused her injuries, their verdict should be for plaintiff. Plaintiff contends that these instructions concerning negligence were sufficient to apprise the jury that to hold defendant liable they must find notice and a failure to remove after a reasonable time, but there is nowhere a statement that under the circumstances of this case the actionable negligence is not the slippery condition of the stairway, but the failure to cure the condition after notice, express or implied. Particularly is this so, in view of the fact that when discussing the requirements under the unseaworthy count the court stressed the necessity of notice. While the court instructed the jury that they must consider the instructions as a whole, the instructions concerning notice were clearly limited to the unseaworthy cause of action and could not reasonably have been considered by the jury to apply to the Jones Act questions. Defendant offered proper instructions which the court refused to give. As instructed the jury could have understood that to apply the unseaworthy cause they must find notice but to hold defendant negligent under the Jones Act they were merely required to apply the ordinary rules of negligence. The failure to instruct properly in this respect

constituted error in this case. While it is true that the jury under the evidence could have found for defendant on the unseaworthiness count, we have no way of knowing whether they did so or whether they found under the Jones Act theory as they could have understood it from the instructions, namely, eliminating one of the necessary elements. Particularly is this so when it is remembered that the time between notice of the condition to the executive chef and plaintiff's fall was so brief. While it was long enough so that the jury could have considered it a reasonable time for removal of the condition, it was not long enough to compel such a conclusion. We cannot tell whether the jury so found or erroneously determined that the presence of the slippery substance itself, without anything more, constituted negligence. In such a situation proper instructions on one cause of action and improper ones on another require a reversal. As said in *Clary* v. *Lindley*, 30 Cal.App.2d 571, 575 [86 P.2d 920], "We are not able to say that a different result would not have been obtained with the elimination of the erroneous instructions . . ." (To the same effect, *Intagliata* v. *Shipowners & Mer. etc. Co., supra,* 26 Cal.2d 365, 382.)

As the judgment will have to be reversed, we deem it unnecessary to consider the other questions raised by defendant.

The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied May 12, 1954, and respondent's petition for a hearing by the Supreme Court was denied June 9, 1954.