[Civ. No. 20378.   Second Dist., Div. One.   Oct. 28, 1954.]

DOUGLAS DAVID BLODOW, Appellant, v. PAN PACIFIC FISHERIES, INC. (a Corporation) et al., Respondents.

Raoul D. Magana and W. J. Schall for Appellant.

Lasher B. Gallagher for Respondent.

MOSK, J. pro tem.*—Appellant-plaintiff seeks reversal of an adverse judgment in an action brought in state court pursuant to provisions of the Jones Act (46 U.S.C.A. § 688).

The appellant's first cause of action alleged that respondent employers failed to exercise ordinary care to provide him with a reasonably safe place to work in that they negligently caused and allowed an accumulation of a slick and oily foreign substance to be and to remain upon the surface of a hatch cover on the seagoing vessel involved herein, creating dangerous and insecure footing for appellant who was required to walk thereover in the performance of his duties. As a result, it was alleged, he fell and sustained personal injuries. The second cause of action alleged that respondents maintained the vessel in an unseaworthy condition in that it was being manned with a crew which numbered one less than the number required to fully and safely operate the vessel and that because of the absence of the member of the crew, appellant, although employed and serving as an engineer, was required to and did perform the duties of a deck hand and while performing those duties was injured.

First employed aboard the "Redeemer," the commercial fishing vessel involved in this proceeding, on November 13, 1951, appellant went out for fish on the 26th. The boat came in the next morning with 18 to 20 tons of sardines, and they were brought to the Pan Pacific cannery. After the fish were unloaded there, the crew cleaned up the boat. During the washing of the vessel, appellant, pursuant to his duties

---

*Assigned by Chairman of Judicial Council.

as engineer, remained in the engine room supervising the pumps and auxiliary diesel. An hour or so later the boat put out to sea again on another fishing venture.

To stow a large catch of fish in the hatch of the ''Redeemer'' the large hatch cover was ordinarily taken off, but occasionally when it was desired to deposit a few stray fish in the hatch, only a small wooden cover was removed. The underside of this small cover was seldom completely dry.

During process of the work preparatory to setting the fishing net, appellant came out on deck, walked out of the galley and across the hatch cover, picked up the cover of the net in his arms, and started back to place the net cover on the top of the cabin where it ordinarily remained when not in use. Though he had experienced satisfactory traction in first crossing the hatch cover to obtain the net covering, on the return walk, as he reached a point in the vicinity of the small wooden hatch cover, he testified his right foot felt oil or grease or some oily substance and suddenly went out from under him. He personally saw no substance, and no one testified who did observe any actual foreign matter. The appellant described his feeling that there ''was just no traction there.'' As a result of the fall, appellant sustained personal injuries. Two fellow seamen of appellant testified for the respondent that they saw appellant step off the hatch cover rather than slip off. Another testified when he last saw the hatch cover on the day of the accident it was clean.

Appellant sued Kaoru Suzuki, owner of the ''Redeemer'' and Pan Pacific Fisheries, Inc., a corporation, the latter on a theory of ownership or control of the vessel. No convincing evidence was submitted to implicate Pan Pacific, and on motion the court entered judgment for the latter. Although his appeal is from the whole judgment, appellant in his brief stated he was not attacking the ruling relative to Pan Pacific, which thereupon made a motion to dismiss the appeal from it portion of the judgment. That motion is hereby granted.

Appellant concedes the evidence against the respondent Kaoru Suzuki supports the judgment, or would support a contrary judgment. His only complaint on this appeal is that the trial court erred in giving to the jury the following instruction: ''You are instructed that even if you should find there was a foreign substance on the hatch cover, such condition would not be negligence for which the shipowner is liable unless you also find that the shipowner or the ship's officers knew of its presence, or that it had been there long

enough that the shipowner or the ship's officers should have known of its presence."

Appellant contends that if a fellow servant negligently caused the foreign substance to be deposited or permitted it to remain on the hatch cover, then respondent Suzuki would be liable under the doctrine of *respondeat superior* regardless of actual or constructive notice; only if a third person, not associated with respondent, was or could be responsible for the negligent act is actual or constructive knowledge required; this being a ship at sea not accessible to anyone other than employees of respondent, the respondent is necessarily responsible for all acts or omissions committed on board, and need not be given notice. Thus, contends appellant, while the instruction on *scienter* might be appropriate with regard to the second cause of action, alleging unseaworthiness, it should have been so limited, and had no application to the first cause of action, which was for negligence.

However persuasive appellant's position would be if this were a matter of first impression, we find ourselves bound by what appears to be recently settled law to the contrary.

In *Cookingham* v. *United States*, 184 F.2d 213, a cook slipped on jello while descending a stairway leading to the chill box to get food for the crew. Said the court (p. 214), "There being no evidence as to how long a time the Jello had been on the step prior to the accident, a finding that the ship's officers were negligent in failing to remove it after they knew or should have known of its existence would, we think, not have been warranted." In its discussion of unseaworthiness, the court found (p. 215) the doctrine did not extend to keeping appliances which are inherently sound and seaworthy "absolutely free at all times from transitory unsafe conditions resulting from their use . . . though he may have no knowledge of or control over its happening, and without giving him a reasonable opportunity, such as is afforded by the safe place to work doctrine of the law of negligence, to correct the condition before he becomes liable for it. The ancient admiralty doctrine of unseaworthiness has never gone so far." Certiorari was denied by the United States Supreme Court in 340 U.S. 935 [71 S.Ct. 495, 95 L.Ed. 675].

*Cookingham* was considered prevailing federal law as recently as 1952, although it was factually distinguished in *Hawn* v. *Pope & Talbot, Inc.*, 198 F.2d 800, 802: "The absence of the hatch covers over a length of time which could

reasonably be construed as sufficient to have put appellant on constructive notice of that fact; testimony that the particular area during the critical period was dark and that the footing there was slippery, all combine to present a situation from which the charterer's negligence could be inferred.'' These facts, said the court, justify ''an inference of the existence of that situation for such a period as to remove it from the type of transitory conditions exemplified in *Cookingham* v. *United States* . . .''

While the substantive aspect of Jones Act cases must be determined by federal law (*Intagliata* v. *Shipowners & Merchants Towboat Co.*, 26 Cal.2d 365, 371 [159 P.2d 1]), we find not only in federal cases but also in California law reference to the prevailing negligence rule of notice, actual or constructive. In *Pietryzk* v. *Dollar Steamship Lines*, 31 Cal.App.2d 584 [88 P.2d 783], an instruction basically comparable to the one involved herein was approved. There is nothing in the Jones Act, said the court (p. 592), holding, ''an employer is liable for a defect of which he had no notice and which had lasted such a short time it could not legally be said he should have notice thereof.''

The *Cookingham* doctrine of ''transitory unseaworthiness'' found its way this year into California case law in *Gladstone* v. *Matson Navigation Co.*, 124 Cal.App.2d 493 [269 P.2d 37]. The Supreme Court denied a hearing on June 9, 1954. In Gladstone, a stewardess was proceeding down a stairway carrying a tray, and after she had taken several steps she felt one of her feet ''slide out from under'' her and then the other did so. She was catapulted to the bottom of the stairway, receiving personal injuries. Afterward she observed some kind of black grease or oil over her legs and uniform. Under these circumstances comparable to the instant case, the court said (p. 496): ''While generally there is an absolute liability on a shipowner regardless of notice, for the unseaworthy character of his ship, where there is merely a transitory unseaworthiness, and no fault or failure of appliance or equipment, the shipowner's liability arises only from failure to remove that transitory unseaworthiness within a reasonable time of notice, actual or constructive, or from failure to use ordinary care to keep the ship free from transitory unseaworthiness. Thus either under the Jones Act or the general maritime law pertaining to transitory conditions the rule is practically the same in requiring notice of the condition.'' The court there found the rule to be the same on the negligence count:

"Liability under the Jones Act rests wholly on negligence and where, as here, there is no evidence of how the slippery condition occurred, the negligence of defendant would be the failure of defendant to remove it within a reasonable time after defendant knew of its existence, or after it had been there such a length of time that in the exercise of ordinary care defendant ought to have known of it and removed it."

Appellant relies strongly upon *Adams* v. *American President Lines*, 23 Cal.2d 681 [146 P.2d 1], in which a seaman slipped on an orange peel. While there is a factual similarity, the question raised upon appeal was dissimilar. The court there was concerned primarily with whether the acts complained of, the eating of oranges and the discarding of peels, were within the scope of authority of fellow-seamen, and it found (p. 687) that as well as work to a seaman "Necessary incidents of life, therefore, such as sleeping, eating, washing, etc., are contemplated to be within the scope of the employment." No such issue is involved in the instant case.

While the Jones Act has abolished the common law rule that exempted an employer from responsibility for the negligence of a fellow-employee of the injured, it has not eliminated in an action brought under its negligence phase the requirement that negligence be shown. (*Seaboard Air Line Ry.* v. *Horton*, 233 U.S. 492 [34 S.Ct. 635, 58 L.Ed. 1062, L.R.A. 1915C 11].) The test is not whether afterward one may see a way that the injury could have been prevented, but whether the employer in the exercise of ordinary prudence and care should have reasonably foreseen the likelihood of injury. (*Butz* v. *Union Pac. R. Co.*, ——— Utah ——— [233 P.2d 332, 335].)

Not having produced anyone, including appellant himself, who saw any foreign substance on the hatch cover, we are reduced to mere conjecture as to whether there was any substance, and if so, what it was, and if determined, who placed or permitted it there and how long before the unfortunate accident. Appellant's evidence being of such nebulous texture, it is readily understandable that the jury found for respondents. The instruction complained of was basically correct. Even if omitted, however, the weight of the evidence would indicate an identical result.

While as determined herein, the instruction was fundamentally sound, to avoid its being adopted verbatim by trial courts we suggest one patent defect. The instruction refers to knowledge of the "shipowner or the ship's officers" only.

The rule should not be so restricted. If any of the ship's authorized personnel knew, or should have known, of the presence of a foreign substance, their actual or constructive knowledge would be imputed to the shipowner. Since the evidence here did not disclose knowledge by any of respondents' employees, however, this error in the instruction is not reversible.

The appeal from the judgment in favor of respondent Pan Pacific Fisheries, Inc., a corporation, is dismissed. The judgment in favor of the remaining respondent is affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 22, 1954.